And our final case this morning is Prince v. Appleton Auto. That's what Williams talks about. That's what Lyle talks about. That's what these other cases talk about. All right. I think we have everyone. Mr. McDonald, you may proceed. Thank you, Your Honors. Thank you for the opportunity to present oral argument this morning. May it please the court, I represent Shannon Prince in his lawsuit against Appleton Auto LLC alleging discrimination based upon race and retaliation under Title VII of the Civil Rights Act of 1964. The district court in this case created a summary judgment in favor of the defendants and dismissed plaintiff's lawsuit on the grounds that plaintiff had not demonstrated the genuine issue of material fact that the defendant's affiliates should be aggregated for purposes of Title VII. We are requesting that the decision of the district court be reversed and remanded to court proceedings. The sole issue in this matter is whether the facts sufficiently demonstrate that defendants held themselves out as a single company with multiple locations such that the corporate veil should be pierced and each location's employee be aggregated for purposes of Title VII's 15-employee requirement. If aggregated, defendants can see that the 15-employee threshold has been met. An employer is subject to Title VII if it had 15 or more employees for at least 20 weeks in the current or preceding year in which the allegation of the alleged violation has occurred. This requirement is not jurisdictional but an element of the prima facie case. In some instances, the employees of the employer's affiliates may be aggregated for purposes of counting the number of employees. There are three situations that would allow aggregation. The one that is important here is where traditional conditions are present to pierce the corporate veil, as where the employee neglected corporate formalities or held itself out as the real party with whom the creditor is dealing and to whom the creditor should look for liability in the event of a tort or breach of contract. Here are appellants Shannon Prince named Appleton Auto LLC and Apple Cars LLC as defendants. Appellant later amended his complaint to include Scott McCormick as a defendant. Scott McCormick owns Appleton Auto and Apple Cars. Defendants held themselves out to the public and their employees through their advertising and operational business. But Apple Cars LLC is DBA Appleton Auto and DBA 199 Ride. It represents that this is a single entity with multiple locations. You know, you have made the point in your briefs that the 199Rides.com website suggests that this is really one dealer with multiple locations. But it seems to me that it's not unusual for brand name franchises or dealerships to engage in common advertising. And that doesn't typically preclude the individual franchises or dealerships from being treated as individual entities. Why would a creditor be misled into thinking that these dealerships were really the same rather than separate corporate entities? Thank you for that question. And it's a great question. And it's a question that the court dealt with in Parker versus Sheck Mechanical Corporation. And you're right, there are a lot of companies that have subsidiaries, affiliates listed on their website. But as in Parker, in that case, it's very similar to our case where you have the main company listing several other companies, but not indicating that they're separate legal entities, just indicating that they're part of one overall company. Here, for instance, in our case, we have 199Ride and its website, 199Ride.com, with their locations tab for the various locations. Green Bay Auto, La Crosse Auto, Appleton Auto, etc. Nowhere on that website does it indicate anything of these being individual, separately created companies. They are locations. And I would underscore the fact that the banner across the website indicates that this is Wisconsin's number one volume independent dealer, singular. And they make numerous references on this website to a singular dealer. Whereas, I think, to further answer your question, these other companies, they very specifically indicate on their website and advertising that these subsidiaries or affiliates are, in fact, true, distinct, and separate entities. That they aren't part of one company, that they're not part of one dealership, like we have here in this case. And going further with the website, on this particular website, 199Ride indicates that this, again, is a single dealership, a dealer for the people. It instructs the public to contact Apple Cars LLC, just the one entity, for any details and any questions. Now, Scott McCormick is the sole owner or majority owner for all of the entities involved here. It's very important. And Scott McCormick also is the sole owner for Capital M. And it's fully briefed regarding what Capital M does for these locations, but I'll briefly describe them here. Capital M provides numerous services for the dealership locations. It provides HR services, it provides inventory services, marketing, advertising, legal, compliance. Capital M provides a one-employee handbook that goes to all the locations for all of its employees. Scott McCormick, as an officer of Capital M, holds company-wide meetings throughout the year involving all sales employees, all managers, all general managers for each location. Typically, that meeting is held at the Appleton location. Again, just a single location where everyone gathers for this company-wide meeting. The dealerships also exchange and share inventory and personnel. And very importantly, the defendants represented to the State of Wisconsin Department of Workforce Development that Shannon Prince, the appellant here, was employed with Apple Cars LLC, DBA Appleton Auto, DBA 199 Ryan. If defendants truly wish to separate and make it well known to the public that they're dealing with separate entities, distinct entities, they would take proper precautions to do that. They wouldn't be telling the State of Wisconsin, they wouldn't be telling the employees, they wouldn't be telling the public, look to 199 Ryan as this overarching company that has, again, several locations. And these locations all look the same. They have the same signage. They have the same wording. They have the same tag lines. Everything is the same. It's only operated by, or I'm sorry, it's owned solely or majority ownership by one person, Scott McCormick. And again, they share personnel and inventory. So in this case, Shannon Prince relied on those representations. Shannon Prince relied on the fact that he's dealing with one company, multiple locations, which has numerous employees, much more than 15 employees as a total. When he filed his case, there was no objection at the ERD level from defendants that they had less than the required amount of employees, nor did they have to at that stage. But still, they're representing that 199 Ryan is the DBA of Apple Cars. So Shannon Prince relies on this in removing his action to federal courts. Only then do we hear about these separate, distinct legal entities precluding him from maintaining his Title VII action. Equitable principles and public policy would preclude defendants from arguing that the dealership enterprise is comprised of separate, distinct legal entities for purposes of this action, while at the same time maintaining the exact opposite position in all of its business fairs. If there is a creditor looking for payment, that creditor is going to look at 199 Ryan. That creditor is going to look at Apple Cars, who is listed on the website as the entity responsible for these locations. I see one plan. I'm going to interrupt for just a minute, because I think maybe we should talk about our decision in PAPA, because it suggests that the sharing of various management services like accounting, legal, payroll, does not without more just disregard of the corporate formalities. What is unusual about our case today in that regard? There are a number of things that are different from PAPA, and I did explain that in the reply before. I'll explain more here. Number one, the facts of PAPA, we don't have a lot of facts on that in the record, in the decision, but what we do know is that in PAPA, there was no information, substantial information, that there was a disregarding of the corporate formalities and that that company didn't hold itself out as one company. Whereas here, we have that information in the website specifically, where we have the 199 Ryan and Apple Cars LLC holding itself out, again, as the umbrella company with all different locations under it. So that's what differentiates it from PAPA. And if there are no other questions, I would like to reserve the 120 that was remaining. Yeah, you just used it, but I will give it back to you. All right, Mr. Billing. Thank you. May it please the court. My name is Ryan Billings from Koderman and KLSSC. We represent the Apple E's, Appleton Auto LLC, Apple Cars LLC, and Robert Scott Farmer. The law on employee aggregation under Title VII is driven by two facts. First, in enacting Title VII, Congress made the express policy choice to exempt small businesses. Second, small businesses can't do everything in-house. They must either outsource or integrate with affiliated companies. This is a practical necessity, and it achieves economies of scale. And when you put these together, the law is and has to be that mere integration of operations is not enough. It's misuse of the corporate form that triggers veil piercing under Title VII. Here, in opposition to summary judgment, Prince presented no evidence of misuse of the corporate form under any recognizable veil-piercing test. There's no commingling of funds under capitalization, failure to maintain company records, or use of another entity's assets. There is no domination by another entity or lack of a corporate will. These are separately operated companies that have separate managers who run them. At best… Is it your position that dealerships do not share employees, as Mr. Prince suggests, but simply, on occasion, allow transfers of employees from one dealership to another? Yes. And, very importantly, any employee has only one employer of record. Only one. On infrequent occasions, and it usually occurs when an employee wants to move to another city where there's a dealership location, they can ask, Can I be hired by the other company? The general manager of that company must agree. And, at that point, they cease being an employee of Company A and they start being an employee of Company B. That's in the record at Defendant Supplemental Appendix 22-23, paragraph 60. We go through that in more detail. But there's only one employer of record. There's only one company who's withholding payroll and paying Social Security taxes and that sort of thing at a time. There is no employee of any of these companies who is simultaneously an employee of more than one company. And I want to address some of the points that Mr. McDonald made. One is the website. That was the same fact that we saw in Bridge, and I think, Judge Robner, you were on the panel in Bridge. Small businesses often aggregate functions, including marketing. Marketing is very expensive, and so sometimes they band together and use the same website. And here, the dealerships do that. It's 199Ride, and Mr. McCormick explains in his declaration, and we explained in our statement of material facts, that the purpose of 199Ride.com and advertising under 199Ride is to drive potential customers to the website. At that point, at the point that they make it to the website, they start dealing with an independent company. Let's take the example of Apple cars. If you wanted to buy a car from Apple cars, you would go to the Appleton auto lot. You would be greeted by an Appleton auto employee. You'd speak with an Appleton auto salesperson. You'd sign a contract with Appleton auto that's approved by the general manager of Appleton auto. If there's something wrong with your vehicle, there's no confusion, certainly no intent to defraud with respect to where you take it. You take it to Appleton auto. If there's a defect in the sale, you sue Appleton auto. It's very clear from the customer's perspective. The 199 website is just used at the very early part of the process to try to drive traffic because the dealerships are trying to take advantage of economies of scale in marketing. That's it. Mr. McDonald points out that in a couple of places, the website uses singular pronouns. It uses plural pronouns at least six times by my count. It lists all of the dealerships by their separate names, addresses, and phone numbers and refers to the Wasa auto, Appleton auto, Anago auto, Green Bay auto dealership groups, plural. If we're pulling over semantics, we should look at the totality of evidence. Like I said, from the customer's perspective, normally in bail piercing, you're looking at the creditor, not a customer. If you want to consider the customer, there's no confusion on their part. At the point of decision, at the point of sale, they're dealing with one entity, and it's very clear who that is. With respect to Parker, and I think Judge Rovner, you were also on the panel with Parker, there were a lot of things going on. It was a pro state plaintiff who faced a motion for summary judgment before any discovery was taken. I count at least five independent reasons why the court considered the district court to have been in error. First of which is that the principal question in the case was, did the plaintiff sue the right party? And this court pointed out, well, that party's in the caption. It's referred to multiple times in the complaint. If there's an issue there, it's a defect in the summons, and the district court should have allowed the plaintiff to cure. The district court denied the motion for leave to amend without explanation or addressing it in the decision. The defendant had not made a prima facie case for summary judgment. And it's only after all these reasons that the court said, well, this may not matter because there may be an aggregation argument under PAPA. I believe it characterized the plaintiff's evidence as not overwhelming and certainly didn't rule on that issue. But that was not a Title VII case. And that matters because in Title VII cases, this court has always been careful to keep in mind the congressional policy decision to exempt small businesses. And not to take away with the right hand what Congress has given the left. A lot of the arguments that Mr. McDonnell made, any plaintiff could make in any Title VII case. If I'm denied relief here, then there's potential discrimination, retaliation, improper, other socially harmful activity that is going to go unpunished. That's true in every single Title VII case if it's meritorious. But Congress made the choice to exempt small businesses from Title VII, and it's not the place of this court to make a different policy choice. With respect to inventory, which Mr. McDonnell briefly mentioned, if you go to Appleton Auto and you want a 2004 Toyota RAV4 and Appleton Auto doesn't have it, and Wasa Auto does, Appleton Auto can buy it from Wasa Auto. Each side records the transaction. Wasa Auto has to agree. Appleton Auto has to arrange for transportation. It's recorded in the books. And this is important because many of the dealerships have minority members. And so it's important to track, in the case of Apple Cars, which has employee minority members, that only the profits, losses, expenses, and income of Apple Cars are recorded in its financial statement, so the minority members are treated fairly. With respect to Capital M, I think there's some jumbling of issues. Capital M doesn't advertise. It's not part of the website. It's not 199 Ride. It's a services company, management services company, that provides discrete services exactly like the services that are provided in PAPA. And the question that Judge Posner posed in PAPA was, okay, you're a small business. You hire a third party to do your accounting and your payroll, and you hire an outside law firm to represent you when you're sued. That's not going to trigger bail piercing. So why does it matter that the company shares similar ownership? It doesn't. And that's commonly the case. The reason why you see the same fact patterns popping up again and again in all of these cases, in PAPA, in Bridge, in the district court cases from this circuit that we cited, is this is how small businesses work. This is how they operate. It's how they have to operate. And if this court were to rule that that's enough to aggregate them, then a host of businesses would be swept under the umbrella of Title VII, and that's not what Congress wanted. So that can't be the rule. I'm just looking through my notes here. And, you know, with respect to a creditor, no one contracts with 199RIDE. That's a lead capture system, as Thomas McCormick describes in his declaration, to drive people to a website. The only parties that contract are the individual dealerships under their individual DBAs. So no creditor who loaned money to one dealership is going to be confused as to who they collect from. The contract will say Apple Cars LLC, and they'll look to Apple Cars LLC if the loan isn't paid. So there's no intent to defraud here. There's no fraud here. These are companies who are just trying to make it in a very competitive business by combining and integrating some of their operations in discrete ways, and they do everything that they're supposed to do. In Papa, the court noted that, you know, veil piercing is an extraordinary remedy. It's something that doesn't happen by default. It happens only if a company affirmatively forfeits its right to recognition of the legal fiction. And there's no evidence here that anything the dealerships did forfeited that right. They're separate companies, they follow all the appropriate corporate records, they have meetings, they maintain records, they file their own tax returns, they have their own bank accounts, they own their own property. In all but a few respects, they are entirely independent companies, and certainly they've done nothing to warrant the extraordinary remedy of veil piercing, which under Wisconsin law, like Illinois, Indiana, and many places, is a drastic remedy because Wisconsin respects the corporate fiction. It's very important to our economy and how things work. So I don't think that this is a close call. I think that we're right on the fairway of Bridge and Papa, and many other cases where district courts in this circuit have wrestled with the same sort of facts and the same result should hold, and it's the only result that makes sense, because otherwise we're going to undermine the decision to exempt small businesses from Title VII. And unless there are any questions, I thank you, and I ask you to affirm the district court proposal. All right, thank you. Mr. McDonald, you'll have to unmute, Mr. McDonald. Thank you. I think this case boils down to a Bridge versus Parker scenario. Is it more synonymous with Bridge or is it more synonymous with Parker? Here it's clear. It's much more synonymous and analogous to Parker. In Bridge, the same old website specifically indicated that each company was a separate legal entity. It specifically indicated that they were separate and distinct on that website, as opposed to Parker, where it was exactly what we see here. We have a overarching company with several different locations and zero differentiation or clarification as to the distinctness of them. Again, it treats it as one single entity. This is one, again, dealer singular. This is a dealer. Look to Apple Cars LLC as the dealer. So, Your Honor, based on all of this information, we submit that a genuine issue of material fact exists with respect to whether defendants' affiliates should be aggregated for purposes of Title VII. Therefore, we respectfully request that the district court's decision be reversed and that this matter be remanded for further proceedings. Thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advice and the court will be in recess until tomorrow.